## GEORGE L. GIBSON, Respondent, *v.* G. W. CHEDIC et al. S. B. MARTIN, Appellant.

Where a deed is made in trust for creditors, and those creditors for whose benefit it is made refuse to accept the benefit of the trust, the party who executed the deed may revoke it. This revocation may be by deed or he may direct the trustee to reconvey to himself or to a stranger. The party accepting the conveyance from the trustee would hold the property free from all trust, if such was the intention of the parties, and the conveyance was made *bona fide* and for a valuable consideration.

When a party holding a third mortgage purchases at a judicial sale under the first mortgage, and there is no redemption by the second mortgagee, his title becomes absolute and the second mortgage is cut out. It would be the same thing if, prior to the sale under the first mortgage, the third mortgagee had obtained the legal title.

Appeal from the District Court of the Second Judicial District, State of Nevada, Ormsby County, Hon. S. H. Wright presiding.

32

The facts of the case are stated in the opinion.

*J. J. Williams* and *Thos. E. Haydon*, for Appellants, make the following points:

If Martin was a trustee for Gibson (which we utterly deny), then Gibson should have proceeded to enforce the trust, and not to foreclose the mortgage, which would defeat the trust.

But Martin was not a trustee—the evidence shows he never intended to occupy that position.

The deed to Lewis was a fraud on the creditors of Chedic & Milne, and no trust could arise out of that deed. (*Gregory* v. *Haworth*, 25 Cal. 655 ; Hill on Trustees, top p. 167.)

The deeds to Lewis, and from Lewis to Martin, are absolute on their face, and no parol testimony could be introduced to prove they were in trust. (Hill on Trustees, top page 93, note 2, pp. 165 and 171 ; Storey's Eq. Jurisprudence, sec. 1199, note 2 ; 4 Russ. 422 ; 16 Cal. 356.)

Such trust could not be created by parol. (Laws of 1861, pp. 18 and 19.)

Had the deed to Lewis expressed the trust attempted to be shown by parol, it would have been void. First, because it was calculated to delay creditors ; second, the creditors refused to accept the benefits of the trust.

The benefits of the trust not being accepted by the creditors it was revocable.

*R. M. Clarke*, for Respondent.

A deed absolute on its face may be shown by parol to have been intended as a deed in trust. (3 Leading Cases in Equity, pages 608, 624 to 630, and 642 ; 2 Ib. 705 ; 4 Kent, 142.)

The assent of creditors is not necessary to the validity of a trust. (Willard's Equity, 464–5 ; 11 Wheaton, 117 ; Burrell on Assignments, 229 to 231.)

Martin was the trustee of Milne & Chedic for the benefit of their creditors.

Lewis was trustee for the benefit of creditors, and Martin taking from him with notice, held subject to the same trust.

(Nash's Digest O. R. 661 ; 20 O. R. 581, 607 ; Willard's Equity, 249–50 and 422.)

*Query :*  If Martin had the legal title, derived from Lewis, did it not absorb his mortgage, and leave Gibson's mortgage good ?

Opinion of the Court by Justice BEATTY, full Bench concurring.

This is an equity case arising out of the following state of facts :  In 1862 Milne & Chedic are alleged to have been the owners of a saw-mill and a large tract of land in Ormsby County.  January 25, 1862, Chedic mortgaged his undivided interest to Jonathan Wilde, for one thousand dollars.  April 30, 1862, he gave a second mortgage to plaintiff Gibson, to secure a note for one thousand dollars, with interest at ten per cent. per month from date.

May 17, 1863, Milne united in a mortgage to S. B. Martin to secure seven thousand dollars and interest.  This last mortgage included not only the mill and land owned jointly, or as tenants in common, by Milne & Chedic, but also the separate homestead property of Chedic.  In the Summer of 1862, Wilde commenced suit to foreclose his mortgage.  Judgment was had on the 26th of November, 1862.  Chedic's interest in the land and mill property was sold under Wilde's decree, and he became the purchaser.

In May, just before the expiration of the six months after sale, S. B. Martin, as a holder of a subsequent mortgage, redeemed the same by paying the amount of Wilde's lien, with lawful percentage and charges.  There being no subsequent redemption from him after the expiration of more than sixty days, he obtained a Sheriff's deed for that interest.  This deed was dated in July, 1863.

During the Summer of 1862, about the time Wilde was instituting or prosecuting his foreclosure suit, Milne & Chedic being greatly embarrassed, conveyed the mill property and land adjacent to one Lewis, nominally for twenty-thousand dollars, but by a verbal arrangement between the parties, it was agreed that Lewis should hold the land in trust to pay certain creditors

of Milne & Chedic, the expense of running the mill, etc. (including a compensation agreed upon for his services), and after the net profits of the mill had paid these debts of Milne & Chedic, the property to be redeeded to them. Lewis found, after accepting the deed, that he could not execute the trust. Some, if not all, of the creditors, objected to the arrangement.

The laborers employed upon the mill would not work for him. Lewis finding his scheme impracticable, took no steps in executing the trust. It is not shown that a single one of the creditors for whose benefit, in part, the trust was created agreed to accept it, whilst some expressed their dissent in the most positive terms. Under this state of things the appellant Martin came to Carson to look after his interest in this property, he having a mortgage for seven thousand dollars on the same, and a piece of property belonging individually to Chedic. He applied to Lewis to know about his interest or claim upon the property. Lewis stated the circumstances attending the execution of the deed to himself, admitted he held the title in trust for Milne & Chedic, that he was unable to execute the trust, and would deed the land to Martin if so requested by Milne & Chedic.

After some negotiation between the parties, it was agreed that the land should be deeded to Martin—that if Chedic or his wife should pay two thousand dollars to him within eight months he would credit the same on his mortgage, and release Chedic's homestead. Chedic tried to get him to release the homestead simultaneously with taking the deed to the mill property and the lands; but this he refused to do because the property for which he was getting a deed was not, in his opinion, worth the full amount of his mortgage and the prior liens.

Upon this state of facts the referee who tried the case found that Martin took the deed from Lewis, subject to all the trusts under which Lewis received it, and that he holding the land as trustee for Milne & Chedic and their creditors, when he redeemed from Wilde, redeemed not for himself but as trustee for Milne & Chedic and their creditors. The referee held that Martin took the title to this land as trustee for these parties, because Lewis so held it, and Martin taking a deed from Lewis,

Gibson v. Chedic et al.

with knowledge of the fact that he held it subject to these trusts, must also be treated as holding under the same trusts. The appellants contend—first, that the deed to Lewis being absolute on its face, no unwritten parol evidence could be introduced to show it was in fact a deed made in trust for the purposes explained by the parol evidence; second, that if such proof could be legitimately introduced, still this conveyance could not be held to operate as a deed in favor of creditors who absolutely rejected its provisions. The first point it is not necessary to discuss. We believe it to be settled law that when a deed is made in trust for the benefit of creditors, and they refuse to accept its terms, the party making the conveyance may revoke it. (See Storey's Equity Jurisprudence, sec. 1036.) Admitting that this was a trust deed to Lewis for the benefit of creditors, and these creditors refused to accept of its terms, Milne & Chedic clearly had a right to revoke it. That revocation might have been made by deed. It might have been effected by procuring Lewis to redeed the land direct to them or to deed it to a third party for a consideration to be paid by that party to them. It appears to us that this was precisely the nature of the transaction between Martin, Milne & Chedic and Lewis.

The deed of Lewis to Martin, made with the assent of Milne & Chedic, and upon a consideration passing between them and Martin, operated as a revocation or extinguishment of the trust. The creditors were not injured (at least they had no right to complain) by this arrangement, because they had either positively refused to accept the terms of the trust, or had failed to give notice of their acceptance.

In either case the trust deed was revocable without consulting them. That it was not the intention of any of the parties to this transfer to Martin that he should occupy the position of trustee for the general creditors of Milne & Chedic is evidenced by the fact that, in his negotiation with the other parties, he refused to accept the deed and release his mortgage, because the property was not of sufficient value to pay his debt and prior liens.

It is not to be supposed he would have accepted a position as trustee which would have put other debts not then a lien upon the property (such as the demands of mill hands) ahead

of or on the same footing with his debt. The whole transaction indicates that Martin was desirous of obtaining possession of the property, not as trustee for others, but to make his own debt more secure. The other parties to the deed were willing to give him that position with whatever advantage he could derive from Lewis' deed upon consideration of his making a favorable arrangement with Chedic about releasing his homestead. We are of the opinion, then, that Martin did not occupy the position of trustee for the creditors, or any of the creditors of Milne & Chedic, but that he either stood as the holder of the fee of the land for his own use, and subject to the prior incumbrances, or else he held the position of third mortgagee, with the equitable right to redeem the land from the prior mortgagees and hold it as security for his original debt and his expenditures to redeem it from the prior mortgages. In either case his rights were the same. If he bought in or paid off the prior mortgages, he had a lien on the land for the amount thus expended. But if there was a judicial sale under the senior mortgage on the property, and he purchased at that sale, or redeemed from one who did purchase and obtained a Sheriff's deed, that put him in possession of a full and complete title to the land, so far as the mortgagor had title when he executed the mortgage. This, of course, cuts off all junior mortgages.

The cause is reversed, and the plaintiff's bill will be dismissed by the Court below.